IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE LANCE,    )<br>                    )<br>    Plaintiff,    )<br>                    )<br>    v.              )<br>                    )<br>BOARD OF EDUCATION OF THE CITY )<br>OF CHICAGO,         )<br>                    )<br>    Defendant.      ) | No. 14 C 8709<br><br>Judge Jorge L. Alonso |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Lawrence Lance, lost his job as a teacher at a public high school in Chicago, where he was employed by defendant, the Board of Education of the City of Chicago ("Board"). In this lawsuit, plaintiff claims that defendant interfered with, and retaliated against him for exercising, his rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601. Defendant has moved for summary judgment. For the following reasons, the Court grants defendant's motion.

## BACKGROUND

From 1994 to 2012, plaintiff worked for the Board as an English-as-a-second-language ("ESL") teacher at Carl Schurz High School ("Schurz") in Chicago. (Def.'s LR 56.1(a)(3) Stmt. ¶ 4, ECF No. 29.) In the spring of 2012, Daniel Kramer, the principal at Schurz, evaluated plaintiff's performance by observing his teaching on two occasions. (*Id.*, ¶ 8.) Kramer concluded that plaintiff's teaching was ineffective due to problems with his lesson planning, student engagement, classroom management, and proficiency teaching the assigned subject matter, and he rated plaintiff's teaching for the 2011-2012 school year as "unsatisfactory." (*Id.*) In June 2012, Kramer informed plaintiff that he had decided, based on plaintiff's poor

performance as an ESL teacher and a request from the department coordinator to remove plaintiff from the ESL program, that plaintiff would not teach ESL the following school year. (*Id.*, ¶¶ 11-12.) The chairperson of the history department offered to accept plaintiff into that department, and Kramer thought plaintiff would be more effective as a history teacher, so Kramer decided to reassign plaintiff to teaching history. (*Id.*, ¶ 13.) In September 2012, plaintiff was informed that he would teach history in the 2012-2013 school year. (*Id.*)

On September 6, 2012, plaintiff took leave under the FMLA to deal with mental health issues. (*Id.*, ¶ 18; *Id.*, Ex. 1, Pl.'s Dep., at 77:24-78:15.).

While plaintiff was on leave, the Board notified Kramer that Schurz's enrollment had not met projections, its budget would be cut, and Kramer would have to eliminate either a full-time teacher position or its equivalent in part-time or overtime positions. (*Id.*, ¶¶ 20-22.). Weighing his options, Kramer knew that teachers in the overtime positions (*i.e.*, teachers due overtime pay because they were teaching more than the standard number of students per class period or more than the standard number of class periods per school year) were often teaching critically important courses that Schurz would be unable to offer without making use of overtime teaching. (*Id.*, ¶ 25.) The class sizes in the history department, however, were below the maximum number of students per class. (*Id.*) This meant that if Kramer eliminated a history teacher's position, the remaining teachers could absorb that teacher's students without exceeding class-size limitations and with minimal disruption to the students' education. (*Id.*, ¶ 25.)

Kramer decided to eliminate a full-time history teacher position, and he communicated his decision to the Board's Budget Office. (*Id.*, ¶ 26.) The Budget Office then forwarded the decision to the Board's Talent Office for review. (*Id.*)

When the Talent Office learns that a position in a particular department of a particular school has been eliminated for budgetary reasons, it reviews the seniority, certifications, endorsements and performance evaluations of teachers who hold that position to determine which teacher will be displaced. (*Id.*, ¶ 27.) Per Board policy at the time, teachers with unsatisfactory performance evaluations were displaced first, regardless of seniority or other factors. (*Id.*) Although plaintiff believes he heard of other teachers at Schurz who received unsatisfactory performance evaluations in 2011-2012 (*Id.*, Ex. 1, at 62:17-24), the Board's records show that plaintiff was the only such teacher. (*Id.*, ¶ 28.) Therefore, the Talent Office identified plaintiff as the teacher to be displaced, and it communicated its determination to Kramer. (*Id.*, ¶ 29.)

On October 10, 2012, while plaintiff was still on FMLA, Kramer notified plaintiff that he had lost his position at Schurz due to the weaker-than-expected enrollment and would be re-staffed in the Reassigned Teacher Pool ("RTP"). (*Id.*, ¶ 31.) Plaintiff received a letter from the Talent Office to the same effect. (*Id.*) He was officially assigned to the RTP on November 27, 2012, when he returned from FMLA leave. (*Id.*, ¶ 33.) Pursuant to the collective bargaining agreement between the teachers' union and the Board, plaintiff could stay in the RTP for one year, during which time his salary and benefits would remain the same, and he would receive a series of temporary assignments at various Board schools while he searched for a permanent teaching position. (*Id.*, ¶ 35.)

Plaintiff had not found a permanent place by the end of his one-year term, so he applied for and accepted a one-year position as a Cadre Substitute Teacher, at a reduced salary. (*Id.*, ¶ 36.) After his one-year term in the Cadre pool elapsed, plaintiff retired. (*Id.*, ¶ 38; *id.*, Ex. 1,

Pl.'s Dep., at 91:21-92:6.) He now receives a pension, which amounts to a fraction of his former salary, and works as a part-time, day-to-day substitute teacher. (*Id.*, ¶ 39.)

## ANALYSIS

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the court may not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court must view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

Plaintiff claims that the Board interfered with his FMLA rights, and retaliated against him for exercising those rights, by transferring him to the RTP pool immediately upon his return from FMLA leave, with the result that he was later forced to work as a Cadre substitute for a year and ultimately to retire. The FMLA required the Board to restore plaintiff to the same or an equivalent position to the one he held before he took leave, *see James v. Hyatt Regency Chi.*, 707 F.3d 775, 780 (7th Cir. 2013), but plaintiff claims that his reassignment to the RTP was a demotion that violated his FMLA rights. Additionally, plaintiff claims that his regular teaching position was eliminated solely in retaliation against him for taking FMLA leave.

According to the Board, the evidence reveals that plaintiff's position was eliminated purely for budgetary reasons, and plaintiff has not introduced or cited any evidence to the contrary that might create any genuine issue of fact. Because the elimination of plaintiff's position in the history department at Schurz had nothing to do with plaintiff's FMLA leave, the Board argues, his FMLA interference and retaliation claims must fail.

## I. RETALIATION

To prevail on his FMLA retaliation claim, plaintiff must show that the Board intentionally discriminated against him for exercising his FMLA rights. *See King v. Preferred Tech. Grp.*, 166 F.3d 887, 891-92 (7th Cir. 1999). As under Title VII, he may prove his claim by using either the direct method of proof or the indirect method of proof. *Id.* The Seventh Circuit has explained the difference as follows:

> Under the direct method, [the plaintiff] must demonstrate that (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal connection exists between the two. Under the indirect method, the first two elements remain the same, but instead of proving a direct causal link, the plaintiff must show that he was performing his job satisfactorily and that he was treated less favorably than a similarly situated employee who did not [engage in protected activity]. Once a plaintiff establishes the *prima facie* case under the indirect method, the defendant must articulate a nondiscriminatory reason for its action; if he does, the burden remains with the plaintiff to demonstrate that the defendant's reason is pretextual.

*Stephens v. Erickson*, 569 F.3d 779, 786-87 (7th Cir. 2009) (internal citations omitted).

### A. Direct Method

The plaintiff can prove the causation element under the direct method via direct evidence (akin to an admission) or "by presenting a 'convincing mosaic of circumstantial evidence' that would permit the same inference without the employer's admission," such as evidence of pretext, disparate treatment of similarly situated individuals, "suspicious timing, ambiguous statements oral or written, and other bits and pieces from which an inference of [retaliatory] intent might be drawn."[1] *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012) (quoting *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)).

---

[1] The Court notes that the Board cites *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002), and *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 560 (7th Cir. 2004) (relying on *Stone*) for the proposition that a party proceeding under the direct method may not rely on inferences or circumstantial evidence to

5

Plaintiff concedes that he has no direct evidence that he lost his position because he took FMLA leave. His response to defendant's motion is essentially that the Board's explanation of plaintiff's layoff is fishy. Plaintiff claims that he never received an "unsatisfactory" performance review in 17 years, until Kramer gave him one in 2012. The evidence shows that Schurz's enrollment did not drop between the 2011-2012 school year and the 2012-2013 school year, so plaintiff doubts that Kramer truly received information in September 2012, while plaintiff was on leave, that required him to eliminate a position based on budget cuts. The Board has submitted only "self-serving declarations" of Board employees, including Kramer, to prove that it was truly only the blind operation of standard Board policy and procedure that, due to a "claimed . . . drop in enrollment" at Schurz, resulted in a "mandatory two year retirement snowball, forcing [plaintiff] out prematurely." (Resp. at 4, ECF No. 33.) In short, plaintiff suggests that the timing of his layoff is so suspicious that, making all reasonable inferences in plaintiff's favor, as the Court must at the summary judgment stage, there is a genuine issue of fact as to whether plaintiff suffered FMLA retaliation.

But in this case, there is no reason to be suspicious of the timing if the Board has correctly represented the sequence of events leading to plaintiff's termination and the policies and procedures underlying them, and plaintiff has adduced no evidence to undermine the Board's account other than his own unsupported personal belief in a causal link between his "displacement," as the Board calls it, and his exercise of FMLA rights. He has not submitted any statement of additional facts under Local Rule 56.1(b)(3)(C), and his responses to the Board's 56.1(a)(3) statement of facts are often improperly general or unsupported by citations to the

---

survive summary judgment. The Seventh Circuit has repeatedly recognized that the portion of *Stone* on which the Board and *Hudson* rely is a "misleading dictum." *See Sylvester v. SOS Children's Villages Ill., Inc.*, 453 F.3d 900, 902 (7th Cir. 2006), *quoted in, e.g., Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008) *and Treadwell v. Office of Ill. Sec'y of State*, 455 F.3d 778, 781 (7th Cir. 2006).

record. (*See* Reply at 3-4 (describing deficiencies in plaintiff's 56.1(b)(3)(B) responses), ECF No. 38.)

The Board, on the other hand, has submitted declarations from Gregory Volan, of the Board's Budget Office; Lauren Clair-McClellan, of the Talent Office; and Principal Kramer. Among the exhibits attached to Kramer's declaration are Exhibit B, the memorandum from the Budget Office, dated September 27, 2012, notifying Kramer that Schurz's enrollment had not met projections and he would have to eliminate a teaching position, and Exhibit C, a copy of the email that Clair-McClellan of the Talent Office sent to Kramer identifying plaintiff as the employee who would be "impacted" due to the "enrollment decrease[]." (Kramer Decl., Exs. B-C, ECF No. 29-2.) Plaintiff has not introduced or identified any evidence that provides any reasonable basis for doubting the veracity of the Board's evidence, which tells a coherent story. Plaintiff calls the Board's declarations "self-serving," but be that as it may, these declarations are competent evidence of matters within the personal knowledge of the declarants, and plaintiff has not offered countervailing evidence.

In an attempt to cast doubt on the Board's assertion that Kramer was required to eliminate a teaching position at Schurz for budgetary reasons, plaintiff makes much of the fact that the actual enrollment of Schurz in the 2012-2013 school year was actually slightly higher than in the preceding year, but this is not a useful comparison: the memo from the Budget office plainly states that Kramer, as principal of Schurz, was required to make a "staffing adjustment" because the actual enrollment at Schurz was 43 students lower than the "***projected*** enrollment on which [the] initial FY 2013 staffing was based." (Kramer Decl., Ex. B, ECF No. 29-2) (emphasis added.) It is not the difference between the actual 2011-2012 enrollment and actual 2012-2013 enrollment that mattered, but the difference between the enrollment projections for the 2012-

7

2013 school year and the actual 2012-2013 enrollment. Plaintiff rejoins that a difference of only 43 students in a school of more than 2000 is *de minimis* and cannot have been the real reason for a staffing adjustment, but he offers no evidence in support of this argument.

Plaintiff also denies that his performance in 2012 was actually unsatisfactory and claims to have never received an "unsatisfactory" review other than the one he received from Kramer in 2012, as if to suggest that Kramer must have had some animus against plaintiff, but he does not dispute that Kramer gave him an unsatisfactory performance review in the *spring*, not fall, of 2012 and told him promptly that he would not be teaching ESL in the fall. Thus, even if it is true that Kramer had something against plaintiff, and even if it is also true that Kramer was somehow able to manipulate the multi-stage, multiple-actor layoff process so that plaintiff would be the one that the Talent Office selected to be displaced, Kramer's animus would have to have pre-dated plaintiff's FMLA leave, as Kramer first gave plaintiff his unsatisfactory review more than three months before plaintiff took FMLA leave. The timing of the events does not support plaintiff's theory that Kramer was retaliating against plaintiff for taking FMLA leave, nor does any other evidence in the record provide any reasonable basis to tie any of Kramer's actions to plaintiff's exercise of his right to take FMLA leave.

As the Board correctly points out, the Seventh Circuit has frequently described the summary judgment phase as the "put up or shut up" moment of a lawsuit. *See, e.g., Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). To preclude summary judgment, an issue of fact must be "genuine," which is to say there must be more than a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In this case, the Board's evidence tends to prove that plaintiff's FMLA leave had nothing to do with his displacement from his position at Schurz, and plaintiff has introduced no evidence to the

8

contrary. The fact that he may harbor some "metaphysical doubt" about why he was laid off is not enough to preclude summary judgment.

### B. Indirect Method

Under the indirect method, plaintiff need not show causation directly; instead, he must show that he was performing his job satisfactorily, but he was still treated differently from similarly situated employees who did not take FMLA leave.

The Board claims that plaintiff was not performing satisfactorily; in fact, his unsatisfactory performance review is precisely why he was selected for displacement. Plaintiff disputes that he was actually performing unsatisfactorily, the performance review notwithstanding.

But even if the Court assumes that plaintiff was performing his job satisfactorily, he has not identified a single person who was similarly situated but treated differently. Without such evidence, he cannot establish a *prima facie* case under the indirect method.

Even if he had introduced any evidence of valid comparators, the Board has provided a legitimate, non-discriminatory reason for displacing plaintiff, and there is no genuine issue of fact as to whether the Board's reasons for displacing plaintiff were pretextual. As explained above in Part I.A. of this Memorandum, plaintiff has introduced no evidence that casts any genuine doubt on the Board's account of the events that led to plaintiff's displacement from Schurz, which is amply supported by evidence showing that plaintiff's displacement was the consequence of an unsatisfactory performance review and a budget cut, both of which were unrelated to his FMLA.

The evidence reveals no genuine issue of fact as to plaintiff's FMLA retaliation claim.

## II. FMLA INTERFERENCE CLAIM

Plaintiff claims that the Board interfered with his FMLA rights by failing to restore him to the same position or an equivalent position upon his return to work from FMLA leave.

The Board argues that an "equivalent" position is one "with the same benefits, pay and other terms and conditions of employment," *Kronenberg v. Baker & McKenzie LLP*, 692 F. Supp. 2d 994, 1001 (N.D. Ill. 2010), and, according to the Board, plaintiff was restored to an equivalent position: his position in the RTP had the same pay and benefits as his position at Schurz. The Board ignores the fact that the RTP position was temporary, whereas the position at Schurz was permanent. The Court is skeptical of the argument that these two teaching positions are somehow equivalents despite that key difference.

The Board also argues, however, that plaintiff is not entitled to "a right, benefit, or condition to which [he] would not have been entitled if the leave had not been taken." *See Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1018 (7th Cir. 2000). Plaintiff ultimately bears the burden of proving that he would have been able to remain in his teaching position at Schurz if he had not taken FMLA leave. *See id.* But the evidence shows that his displacement from his teaching position at Schurz had nothing to do with his FMLA leave, and would have occurred even if he did not take FMLA leave. He was selected for displacement based on the following chain of events: (1) in May 2012, long before plaintiff went on FMLA leave, he received an unsatisfactory performance review; (2) in September 2012, shortly after plaintiff went on FMLA leave, the Budget Office notified Kramer that he would have to eliminate a teaching position because Schurz's enrollment did not meet projections; (3) Kramer decided to eliminate a teacher position in the history department because that department had relatively small class sizes, and he notified the Talent Office of his decision; (4) the Talent Office, after reviewing personnel

records and finding that plaintiff was the only teacher in the history department at Schurz to receive an unsatisfactory performance review in the preceding year, identified plaintiff as the person to be displaced.

The Court fails to see how, why or at what point plaintiff's FMLA leave played any role in this process, which appears to have occurred independently of plaintiff's decision to take FMLA leave. The Board's evidence, which plaintiff has not contradicted other than to express general skepticism, tends to show that the Board did not interfere with plaintiff's FMLA rights by failing to restore him to an equivalent position upon his return from leave because, for budgetary reasons unrelated to plaintiff's FMLA leave, there was no such position at Schurz for plaintiff to reassume. *See Cornelius v. Furniturefind Corp.*, 547 F. Supp. 2d 918, 923-24 (N.D. Ind. 2008) (citing *Rice*). The FMLA gives plaintiff the right "to be treated as he would have been had he not taken leave," *see Rice*, 209 F.3d at 1019-20 (Evans, J., dissenting); it does not provide a blanket prohibition on laying off employees while they are on FMLA leave. Plaintiff has not created a genuine issue of material fact regarding whether his displacement was related to his FMLA leave or interfered with his exercise of FMLA rights.

## **CONCLUSION**

For the reasons set forth above, the Court grants defendant's motion for summary judgment. Civil case terminated.

**SO ORDERED.**                                   **ENTERED**: August 19, 2016



**HON. JORGE L. ALONSO**
**United States District Judge**